**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

**RICHARD C. BENTLEY** — **CIVIL ACTION NO. 08-1017**

**VERSUS** — **JUDGE DOHERTY**

**LCM CORPORATION, DANNY R. HUBBARD, II** — **MAGISTRATE JUDGE METHVIN**

***RULING ON MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER AND SUA SPONTE RULE 11 HEARING (Rec. Docs. 77, 80)***

Before the court is a motion to quash subpoena and for protective order filed by non-party attorney Gary McGoffin. On August 19, 2009, the undersigned heard oral argument on the motion and the issue of sanctions, including Rule 11 sanctions, an issue raised by the court *sua sponte*.[1] After hearing, the court maintained its prior ruling granting the motion to quash,[2] granted the motion for protective order, and imposed sanctions pursuant to Fed. R. Civ. P. Rule 45(c)(1) for the reasons set forth below.

***Background and Argument***

The background events that lead up to this litigation have been detailed in the previous ruling by this court granting the motion to quash, and in the memoranda submitted by the parties.[3] In summary, McGoffin was an attorney for Robert Fanguy in a state court suit filed by Robert Bentley entitled Bentley v. Fanguy. Danny R. Hubbard, II, a defendant in this federal suit, had once served as Bentley's environmental expert in the state court suit. At some point,

---

[1]See Rec. Doc. 80 "Ruling on Motion to Quash and Order Setting Hearing."

[2]See Rec. Doc. 80.

[3]See Rec. Doc. 80.

Hubbard removed himself from the lawsuit. Bentley lost his state court suit, and thereafter sued Hubbard and his employer, LCM in this court, based on diversity jurisdiction, alleging Hubbard violated his contract by failing to provide services and by releasing privileged information to Fanguy and his attorney McGoffin.

***The Subpoena***

Non-party attorney Gary McGoffin filed the instant motion to quash, challenging a subpoena directed to him from plaintiff, Richard C. Bentley, for "Any & all documents, records, emails, recorded conversation, cancelled checks, exchanged & shared between you and Danny R. Hubbard, II as pertained to Bentley v. Fanguy."

Bentley issued the subpoena to McGoffin pursuant to Federal Rules of Civil Procedure Rule 45, seeking materials exchanged between Hubbard and McGoffin pertaining to the Bentley v. Fanguy action. McGoffin filed the motion to quash and for protective order in response, arguing the subpoena was procedurally defective and was issued without notice to defendants as required by Fed. R. Civ. P. Rule 45(b)(1). Mover also argued the subpoena sought attorney work-product, was unduly burdensome, and issued for purposes of harassment. McGoffin requested a protective order issue prohibiting any further discovery by Bentley directed towards McGoffin or Fanguy, and their families, agents, employees, attorneys or other consultants, based on Bentley's improper issuance of the subpoena for harassment purposes.

After reviewing McGoffin's motion, and the proceedings in the state court action, Bentley v. Fanguy, the court found serious cause for concern regarding the purpose of the subpoena and the possibility of abusive litigation tactics. The Bentley v. Fanguy proceedings were outlined in the initial "Ruling on Motion to Quash and Order Setting Hearing," (Rec. Doc. 80), as follows:

1. On November 20, 2007, Judge Porter granted a sanction motion in favor of Fanguy and against Bentley, "based upon the Court's determination that the purpose of the *second* First Supplemental and Amended Petition filed by Richard Bentley was to harass and annoy. Richard Bentley is ordered to pay to Bobby Fanguy the sum of $4,883.03 for attorney fees together with all Clerk of Court costs associated with that motion." (*See* Rec. Doc. 77-3. Exhibit "D").

2 On May 14, 15, and 16, 2008, Judge Porter tried the case. Bentley was represented by Ed Bankston, who also represents Bentley in this matter. Fanguy was represented by Gary McGoffin. In a ruling dated July 17, 2008, the court granted a partial judgment on the merits, resolving cross-motions for injunctions. Judge Porter ruled in favor of Fanguy and against Bentley, and also imposed sanctions on Bentley for ***contempt of court***, as follows:

> It is ORDERED that the claim for a permanent injunction filed by Richard Bentley is denied.
>
> It is FURTHER ORDERED that Bobby Fanguy's reconventional demand for permanent injunctive relief is granted prohibiting the followin conduct by Richard Bentley which constitutes a nuisance under the La. Civil Code and the Country Estates Restrictive Covenants. Specifically, Richard Bentley is prohibited from:
>
> a) Entering Fanguy's property;
>
> b) Obstructing the flow of the drainage ditch or culvert in any way.
>
> c) Directing surveillance cameras at the Fanguy home;
>
> d) Failing to maintain the grass in the ditch below twelve inches in height;
>
> e)interfering with the peace and full enjoyment of the Fanguy's home by the Fanguys, their guests, prospective purchasers and future owners of the Fanguy home;
>
> f) Filing any state court lawsuit against Bobby Fanguy, his family, his agents, employees, attorneys or other consultants in any venue or docket number other than Division G of the 16th JDC;
>
> g) Pruning, cultivating, cutting or in any way damaging the Russian Olive hedge belonging to Bobby Fanguy

> IT IS FURTHER ORDERED that Richard Bentley be held in contempt of this Court for violating the August 23, 2007 preliminary injunction " . . . prohibiting Richard Bentley from filing additional legal proceedings against Bobby or Karia Fanguy, or their agents or employees, outside of this lawsuit. . .

(*See* Rec. Doc. 77-3, Exhibit "E")

Judge Porter also indicated that sanctions under LSA-C.C.P. Art. 863 [4] (similar to Fed. R. Civ. P. 11) were appropriate in connection with the conduct of Mr. Bentley and his attorney, Ed Bankston, and that these would be determined at a later hearing.

3. On September 8, 2008, Judge Porter held the evidentiary hearing to determine damages.

4. On October 10, 2008, in open court, Judge Porter issued a ruling in favor of Fanguy, granting sanctions under Art. 863 against Bentley in the amount of $17,446.76, as attorney's fees. (*See* Rec. Doc. 77-3, Exhibit "F")

After the review of the state court litigation and the current pleadings and subpoena, the court provisionally granted McGoffin's motion to quash due to procedural deficiencies, and set a hearing for final determination of same, along with the motion for protective order. The court also *sua sponte* raised the issue of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

At the hearing, Ed Bankston, counsel for Bentley, stated he wrote and signed the subpoena issued to McGoffin. Bankston acknowledged the subpoena was postmarked July 8, 2009,[5] the same date the court denied Bentley's motion to compel substantially the same

---

[4] Text of LSA-C.C.P. Art. 863, provided in original ruling, omitted.

[5] See Rec. Doc. 77-3, p. 2.

discovery from defendant Hubbard, due to Hubbard's response that he had already sent all responsive documents.[6]

At oral argument, Bentley stated he sent the subpoena to McGoffin, because he wanted to see what documents Hubbard had sent to McGoffin. He specifically stated he believed Hubbard had forwarded a box of Bentley's documents to McGoffin, documents which Bentley had previously sent to Hubbard. A letter dated March 7, 2008, was presented to the court wherein Hubbard wrote he had returned the box of materials to Bentley "in December of 2007 sometime before Christmas."[7] Another letter was noted, dated March 3, 2008, wherein LCM corporation stated an enclosed a thumb drive contained all documents related to the Bentley v. Fanguy litigation held by LCM, which were removed and copied from Hubbard's computer.[8]

At oral argument, McGoffin stated he never received any box of documents from Hubbard as alleged by Bentley. McGoffin reiterated that Hubbard and LCM had already certified in their discovery responses they had already produced the documents subject to the subpoena, and McGoffin stated that while it was possible there may be *some* few documents in his possession that Hubbard or LCM had not already produced, the burden to retrieve all documents from his files and cross-check them with the documents produced by Hubbard and LCM was unduly burdensome.

In support of his motion for a protective order and sanctions, McGoffin argued Bentley has engaged in a repeated pattern of harassment against him, as well as against his client Fanguy,

---

[6]See Rec. Doc. 76.

[7]The letter is attached hereto.

[8]Rec. Doc. 94-6, p. 49.

in multiple forums, for example: Bentley filed a disciplinary action against McGoffin, which he supplemented twice, requiring a response from McGoffin each time; Bentley attempted to make McGoffin a direct defendant in the Bentley v. Fanguy matter, on what Judge Porter called "a broad unsubstantiated allegation;" Bentley moved to disqualify McGoffin as counsel for Fanguy; Bentley *again* attempted to bring McGoffin into the litigation as a defendant, along with Fanguy's two expert witnesses and their employers; Bentley delivered his second attempted lawsuit against McGoffin to McGoffin's home address, and Bentley later left a voice message at McGoffin's mother's home; and, Bentley filed a defamation lawsuit against McGoffin.[9]

Mr. Bentley also admitted at oral argument having written a cover sheet for several printed email messages where McGoffin was referred to as "McGoatf**k."

***Applicable Law and Discussion***

Federal Rules of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. Hebert v. Lando, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be

[9]See *Memorandum in Support of Rule 11 Sanctions* (rec. doc. 94).

> taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. *The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense*. . . . (Emphasis added).

Furthermore, under Rule 45(c)(1), a party requesting a subpoena is responsible for taking reasonable steps to avoid placing undue burdens or expenses upon the party subject to that subpoena. If the litigant's actions are unreasonable, a court may impose appropriate sanctions, including attorney's fees and lost earnings.

*Motion to Quash*

The undersigned finds the subpoena was procedurally deficient, as determined in this court's prior Ruling.[10] Furthermore, the undersigned find the discovery sought has been certified as already produced by defendants LCM and Hubbard, and the sought after production from non-party McGoffin is overly burdensome. Bentley's belief that LCM and Hubbard are not being truthful does not justify a time-consuming dig through non-party McGoffin's files for proof of same. Therefore, the prior ruling granted the motion to quash will be maintained.

*Protective Order and Sanctions*

A review of the record shows that in the state court litigation where these parties were involved, Bentley continually harassed McGoffin (and Fanguy and others) through the legal system, to the point where sanctions were assessed against him under Louisiana Code of Civil Procedure article 863 not once, but twice; the trial judge entered a protective order against Bentley prohibiting him from, *inter alia*, "filing any state court lawsuit against Bobby Fanguy, his family, his agents, employees, attorneys or other consultants in any venue or docket number

---

[10]Rec. Doc. 80.

other than Divison G of the 16th Judicial District Court."[11] The Judge in the Bentley v. Fanguy litigation, in his reasons for judgment, stated as follows:

> The court is of the opinion that Richard Bentley at the inception of this controversy and at the inception of the litigation, beginning in June of 2005, has used the judicial system to harass, annoy, and unnecessarily prosecute a claim of nuisance against Bobby Fanguy. . . .every person who disputed the allegations by Mr. Bentley were met with personal lawsuits. . . .Mr. Bentley filed suit against the Department of Health and Hospitals, the Department of Environmental Quality, their scientist, personally, every laboratory who had taken a sample from the ditch between the two properties, he attempted to file suit against Mr. Fanguy's attorney, Mr. McGoffin, filed a complaint with the Office of Disciplinary Counsel against Mr. McGoffin, filed a separate suit in the 15th Judicial District against Mr. Fanguy and Mr. McGoffin, set up a surveillance camera that was pointed at the Fanguy home and property, used paint thinner to spray on the Olive Hedges that separated the two properties.
>
> In this Court's experience, Mr. Bentley took extraordinary and outrageous methods and tactics to try to badger, annoy, harass and overwhelm his opponents at every turn.[12]

The venue has changed, but all indications to date in the present litigation are that Bentley's methods and tactics, unfortunately with the apparent consent and approval of his attorney, Mr. Ed Bankston, have not. The court warned Bentley and Bankston that these types of litigation tactics will not be tolerated, and in an effort to curb future abusive litigation, finds good cause to enter a protective order under Rule 26(c), as requested by McGoffin, prohibiting any further discovery by Bentley from third-parties McGoffin or Fanguy, or defendants LCM and Hubbard, their families, agents, employees, attorneys and other consultants without prior court approval.

---

[11]Rec. Doc. 77-3.

[12]See Rec. Doc. 77-3, pgs. 47, 48.

The court also finds the subpoena was unreasonable, as it was issued for improper purposes: to annoy and harass McGoffin, and to circumvent this court's order denying Bentley's motion to compel substantially the same information from defendant Hubbard. As noted above, the subpoena issued the same day the order denying Bentley's motion to compel was issued, and with no notice to either defendant LCM or Hubbard. Therefore, the court finds sanctions under Fed. R. Civ. P. Rule 45(c)(1) are warranted. McGoffin is an attorney, and represented himself in opposing the subpoena. Therefore, counsel for Bentley, as the author of the subpoena, shall be ordered to reimburse McGoffin for his lost earnings in the form of billable time spent resisting the subpoena.

Therefore, for the reasons given above,

**IT IS ORDERED** that McGoffin's Motion to Quash Subpoena and for Protective Order (rec. doc. 77) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff is prohibited from propounding further discovery upon McGoffin, Fanguy, LCM or Hubbard, their families, agents, employees, attorneys, and other consultants, without an order by this court permitting same;

**IT IS FURTHER ORDERED** that sanctions are assessed against Mr. Bentley's attorney, Mr. Ed Bankson, as the author of the subpoena, pursuant to Fed. R. Civ. P. Rule 45(c)(1);

**IT IS FURTHER ORDERED** that mover McGoffin shall submit and file, within 10 days from the date of this ruling, an affidavit of lost earnings incurred in opposing the subpoena. Any opposition thereto shall be filed within 5 days after submission of the affidavit.

Signed at Lafayette, Louisiana, on August 21, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)