RECEIVED

SEP - 8 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RICHARD C. BENTLEY                          CIVIL ACTION NO.  08-1017

VERSUS                                      JUDGE DOHERTY

LCM CORP., ET AL.                           MAGISTRATE JUDGE HANNA

**MEMORANDUM RULING**

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the instant action be stayed pursuant to the *Colorado River* abstention doctrine, and further recommends a discovery sanction against plaintiff Richard C. Bentley in the amount of $1,500.00 in connection with a subpoena issued by Mr. Bentley.  For the following reasons, this Court AFFIRMS the discovery sanction awarded against plaintiff and in favor of Mr. Gary McGoffin, and further concludes this Court lacks subject matter jurisdiction over the claims of the plaintiff.  Accordingly, the instant action is DISMISSED WITHOUT PREJUDICE.

A.      **Factual and Procedural Background**

The instant case arises out of a related matter pending in state court.  Plaintiff, Richard C. Bentley, filed suit against Bobby Fanguy in the 16th Judicial District, St. Martin Parish, Louisiana, Docket Number 69461.  In the state court lawsuit, plaintiff alleges the mechanical sewer system of his next-door-neighbor, Fanguy, discharged a noxious effluent contaminated by elevated fecal content, which violated health laws, denied plaintiff the free use and enjoyment of his property, and diminished the value of plaintiff's property.  The state court matter underwent full discovery and had a lengthy motion practice.  On July 17, 2008, Judge Charles Porter gave, in pertinent part, the following Reasons For Judgment against plaintiff in open court:

This Court finds that Bentley has initiated legal proceedings for the purpose of delay, annoyance, harassment of the Fanguy family, their attorney, and certain witnesses aligned with Fanguy's defense and prosecution of the reconventional demand.  This Court finds Bentley is subject to sanctions under Article 863 for such conduct.  In addition, this Court finds Bentley in contempt of court on two counts.  Further, Attorney Ed Bankston, who represents Mr. Bentley, may be culpable under Article 863 for sanctions for the conduct to annoy, delay, and harass in connection with these proceedings.[1]

The case went to trial on damages and sanctions.  Judgment was rendered in favor of Fanguy on October 10, 2008, with the following reasons by Judge Porter:

The Court is of the opinion that Richard Bentley at the inception of this controversy and at the inception of the litigation beginning in June of 2009 has used the judicial system to harrass, annoy and unnecessarily prosecute a claim of nuisance against Bobby Fanguy.
.  .  .

In this Court's experience, Mr. Bentley took extraordinary and outrageous methods and tactics to try to badger, annoy, harass and overwhelm his opponents at every turn.  His actions did not appear to the Court to seek the truth or to seek evidence that would help the Court to understand and reasonably decide the case.  The Court believes that these sanctions are the least restrictive that the Court would and could take under these circumstances.  Further, the Court will issue a judgment for $5,000.00 damage to the shrubbery owned by the Fanguy's which were destroyed or damaged by the actions of Richard Bentley.  The Court will cast Mr. Bentley for all costs of these proceedings.

Thereafter, on February 3, 2009, Judge Porter ordered sanctions against Bentley in the form of attorney's fees in the amount of $137,041.75 and costs in the amount of $17,446.76, among other items of damages.  Bentley appealed the ruling to the Louisiana Third Circuit Court of Appeal.  The appeal is still pending.

Bentley also filed a lawsuit in state court against Fanguy's counsel, Mr. Gary McGoffin,

---

[1] *See* Doc. 54-2, pp. 3, 6.

2

which was stayed and then voluntarily dismissed on June 4, 2008.[2]

On May 2, 2008, Bentley filed a federal court action against Fanguy, this time alleging a violation of the Clean Water Act on essentially the same set of facts as those alleged in the state court matter.  That matter was assigned to Judge Haik, who dismissed the case with prejudice and taxed Bentley with costs.[3]  The foregoing federal court action is also currently on appeal to the Fifth Circuit Court of Appeals.

In the instant case, plaintiff sues Danny R. Hubbard, II, the expert plaintiff originally hired in the 16th Judicial Court proceeding, alleging, *inter alia*, Hubbard breached his contract with plaintiff by failing to timely deliver an expert report and disclosing privileged and/or confidential information to Fanguy and his attorney, Mr. McGoffin, the result of which caused the state court judgment against Bentley currently on appeal.  Plaintiff also sued LCM Corp., Hubbard's former employer, for negligently hiring Hubbard.  Many of the claims in the original complaint have been previously dismissed by this Court, however, the claims for breach of contract and expectation damages remain.[4]   This Court notes there is no dispute the contract between plaintiff and Hubbard/LCM is to be construed under the laws of the State of Virginia.

On July 8, 2009, Magistrate Judge Mildred Methvin, who has since retired and is no longer assigned to this case, issued a Jurisdictional Amount Review Ruling, after considerable briefing on the issue of the amount in controversy was filed by both parties.  The magistrate judge ultimately

---

[2] *See Richard C. Bentley v. Gary McGoffin*, Docket No. 2007-6341, 15th Judicial District, Louisiana.

[3] *See Bentley v. Fanguy*, Civil Action No. 08-0600 (W.D. La. 2008).

[4] *See* Judgment dated March 30, 2009, dismissing plaintiff's claims for tortious breach of contract, attorney fees, reliance damages and restitution, but not dismissing plaintiff's breach of contract claim or plaintiff's requests for expectation damages and injunctive relief. *See* Doc. 53.

concluded the jurisdictional amount was satisfied in this case.[5]  This Court notes Magistrate Judge

Methvin's assessment as to jurisdictional amount appears to be based on her belief that the alleged

breach of contract by Hubbard could have caused the "damages" that were assessed against plaintiff

in the underlying state court litigation.

On July 31, 2009, Hubbard filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal

Rules of Civil Procedure, contending this Court lacks subject matter jurisdiction over the instant

case, lacks personal jurisdiction over defendant Hubbard, and that plaintiff fails to state claims upon

which relief may be granted.  The motion was referred to Magistrate Judge Patrick Hanna, the newly-

assigned magistrate judge in this case, who issued a Report and Recommendation on March 4, 2010,

recommending the motion to dismiss be denied as moot and the case be stayed and administratively

closed on grounds this Court cannot determine whether the amount in controversy has been met, as

the amounts claimed as damages in the instant case include the amount of the judgment against the

plaintiff in the state court proceeding, which is not yet final and is currently pending on appeal.[6]  In

the same Report, the magistrate judge imposed a discovery sanction against plaintiff for a subpoena

he served on Mr. McGoffin that the magistrate judge determined was served for purposes of

harassment.  The plaintiff objected to the Report and Recommendation, arguing no sanction should

be assessed against him, and the case should not be stayed.

On March 22, 2010, this Court remanded the matter to the magistrate judge for clarification

of his recommendation in light of the Objection filed by plaintiff.[7]  The magistrate judge issued his

Clarification of Report and Recommendation on June 9, 2010, and the plaintiff filed a response on

---

[5] Doc. 74.

[6] *See* Doc. 123.

[7] *See* Doc. 125.

4

June 24, 2010,[8] renewing his objections to the discovery sanction imposed against him, as well as arguing the case should not be stayed.

**B.      Law and Analysis**

    **1.      The Sanction**

       In his Report and Recommendation, the magistrate judge ruled on a motion for reconsideration filed by the plaintiff in connection with plaintiff's issuance of a subpoena to non-party and attorney Gary McGoffin, Mr. Fanguy's attorney. In his motion for reconsideration, the plaintiff argued the sanction previously imposed by Magistrate Judge Methvin be vacated. In his Report, Magistrate Judge Hanna denied plaintiff's request to vacate the sanction, but reduced the amount of the sanction awarded by Magistrate Judge Methvin from $13,804.00 to $1,500.00.

       Plaintiff argues *no* sanction should have been awarded against him in connection with the subpoena. Magistrate Judge Methvin concluded the subpoena was issued for purposes of harassment, and Magistrate Judge Hanna, reviewing the matter via plaintiff's motion for reconsideration, agreed, albeit at the reduced amount. Magistrate Judge Hanna noted Mr. McGoffin was compelled to file a motion to quash the subpoena, which should have been withdrawn without the necessity of a motion to quash or for protective order being filed by Mr. McGoffin. Magistrate Judge Hanna noted the refusal of plaintiff to withdraw the subpoena resulted in numerous hearings and briefings to address issues that were not necessary to address. Magistrate Judge Hanna concluded the sanction was appropriate pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, which states:

---

[8] *See* Doc. 127.

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. *The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.*

Fed. R. Civ. P. 45(c) (emphasis added).

Pursuant to Rule 45(c), this Court *must* enforce a party or attorney's duty to avoid imposing undue burden on a person subject to a subpoena and *must* impose an appropriate sanctions – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply. After review of the record and the argument of the plaintiff, this Court will not disturb the finding of the magistrate judge and the assessment of the sanction of $1,500.00 against plaintiff in this matter.  Accordingly, the sanction award is AFFIRMED.[9]

## 2.    The Stay of this Matter

The magistrate judge recommends this matter be stayed pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-19, 96 S.Ct. 1236., 47 L.Ed.2d 483 (1976).[10]  The rationale for the stay is the pendency of the related state court proceeding between

---

[9] Although this Court ultimately concludes it lacks subject matter jurisdiction over the instant case, the Court's power to order sanctions for objectionable conduct on the part of plaintiff and his attorney is preserved pursuant to *Willy v. Coastal Corp.*, 915 F.2d 965, 967 (5th Cit. 1990), *citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Although *Willy* and *Cooter & Gell* addressed the issue of whether a court could impose Rule 11 sanctions following the dismissal of the case, both courts noted the inherent power of a court to determine the collateral issue of whether an attorney abused the judicial process and if so, what sanctions would be appropriate given the conduct of the attorney.  This Court finds the rationale of these cases applicable in the instant case.

[10] *Colorado River* is an abstention doctrine.  However, the United State Supreme Court has described abstention as encompassing both a court's declination to exercise its jurisdiction over a particular federal court matter, as well as a court's postponing of the exercise of jurisdiction. *See, e.g., Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty

6

plaintiff and Fanguy, which is currently on appeal to the Louisiana Third Circuit Court of Appeal.
In recommending a stay, the magistrate judge suggests this Court cannot know the jurisdictional
amount in this matter until the state court proceeding is final.  The rationale is that in the instant
lawsuit, plaintiff seeks to recover "all monies paid by Bentley to defendants" in the state court
lawsuit.  Thus, Bentley is seeking to recover the amount of the judgment in the underlying suit that
is pending on appeal in Louisiana state court, which judgment is not final.  The magistrate judge
suggests this Court should stay the case until that amount is known, and that the filing of this action
is premature.

The plaintiff objects to a stay of the instant case, arguing he "has previously shown the
jurisdictional amount to be at least $80,907.53 without consideration of damages attributable to" the
pending state court action, and directing the Court to a previously-filed brief he filed on the issue of
jurisdictional amount.[11]  This Court has reviewed the plaintiff's filings and concludes plaintiff does
not carry his burden of demonstrating that the jurisdictional amount is established in this case.

"The burden of establishing subject matter jurisdiction in federal court rests on the party
seeking to invoke it."  *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1253 (5th
Cir.1998).  "Unless the law gives a different rule, the sum claimed by the plaintiff controls if the
claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283,
288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.),
*cert. denied*, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995).  To justify dismissal in a case
in which the plaintiff claims a determinate amount, "it must appear to a legal certainty that the claim

---

of a District Court to adjudicate a controversy properly before it.").  Thus, the stay recommended by the magistrate
judge appears to be contemplated by federal abstention laws.

[11] *See* plaintiff's Objection to Report and Recommendation, Doc. 124, ¶3.

is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289, 58 S.Ct. at 590. However, bare allegations of jurisdictional facts are insufficient to establish federal court jurisdiction. *St. Paul Reinsurance, supra,* 134 F.3d at 1253, *citing, Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir.1993), *cert. denied*, 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994).[12]

The legal certainty test is inapplicable where the plaintiff does not allege a determinate amount of damages. *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d at 1253. Instead, the burden then becomes a preponderance of the evidence for the party seeking to invoke the court's jurisdiction. *Id.*[13] *See also Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (the party invoking federal diversity jurisdiction bears the burden of establishing the amount in controversy by a preponderance of the evidence). The party seeking to invoke jurisdiction must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000 or (2) setting forth the specific facts in controversy – often referred to as "summary judgment-type evidence" – that support a finding of the jurisdictional amount. *Id.*

In the case at bar, plaintiff has not adequately claimed a determinate amount.[14] Furthermore, after review of the record, this Court concludes plaintiff has failed to support his assertion that the

---

[12] *Asociacion* was a removed case in which the petition stated in a conclusory fashion that the matter in controversy met the jurisdictional amount. The Fifth Circuit has held that case law in removed cases regarding § 1332's jurisdictional amount requirement is "instructive" in analyzing similar issues in diversity cases filed directly in federal court. *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d at 1253 (5th Cir.1998).

[13] In *St. Paul*, the court noted the procedure in place for removal practice, *i.e.*, that the party involving federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, "is instructive in the converse context of" matters filed directly in federal court (in *St. Paul*, the matter field directly in federal court was a declaratory judgment action). *See St. Paul*, 134 F.3d at 1253.

[14] In plaintiff's complaint, he alleges he "has sustained damages, known and unknown, resulting of tortious breach of contract and wrongful compromise of [his] lawsuit." See Doc. 1, ¶21.

amount in controversy exceeds the jurisdictional requirement.

In his first submission on jurisdictional amount, the plaintiff lists his damages as follows:

| Nature of Claim | Amount |
|---|---|
| Payments to LCM Corp. For litigation support | $ 36.655.75 |
| Payment to Dan Hubbard (MMH) for litigation support | $ 15,480.00 |
| Payment to Dan Hubbard for expert report not delivered | $ 6,649.95 |
| Personal Loan to Dan Hubbard | $ 10,000.00 |
| Interest on Loan to Dan Hubbard at 5.5% for 4 years | $ 2,388.00 |
| Paid to Bob Parker to cover for Dan Hubbard (expert) | $ 4,222.50 |
| Judgment against Richard C. Bentley due to Defendants' breach of contract (bad faith) | $159,488.57 |
| Exemplary damages due to breach of contract of implied good faith | $250,000.00 |
| Miscellaneous litigation expenses (writs, appeals, etc.) | $ 20,000.00 |

Although no documentation was attached to the original brief, plaintiff asserted "[a]ll items of damages can be documented upon request, except of course for the exemplary damages to be determined by the Court." The brief was further accompanied by an affidavit of the plaintiff, attesting the listing of damages is true and correct, and further stating the evidence of such items for damages were available for "inspection and copying."[15]

In response, defendant LCM argued the evidence submitted by the plaintiff was not in "summary judgment-type evidence form." LCM argued the plaintiff's entire submission should be stricken, and his Complaint dismissed. Alternatively, LCM argued even if the submission were deemed sufficient by the Court, it is clear plaintiff "is claiming damages for items which are not sued upon in his Complaint, for items which have been dismissed under this Court's ruling on LCM's Motion to Dismiss, and for items to which he is clearly not entitled." For example, LCM argued the

---

[15] *See* Memorandum in Support of Jurisdictional Amount, Doc. 50, p. 1.

All items excluding the Judgment, Exemplary Damages, and "Miscellaneous Litigation Expenses" will be referred to by this Court as "contract-related damages." The contract-related damages in this matter total $75,396.20.

"Payment to Dan Hubbard for expert report not delivered," "Personal loan to Dan Hubbard," "Interest on Loan to Dan Hubbard at 5.5% for 4 years," and "Paid Bob Barker to cover for Dan Hubbard (expert)" are not mentioned in the Complaint, which alleges a breach of contract with LCM and is not a suit on a promissory note to Hubbard. Additionally, LCM argued in a diversity lawsuit, the jurisdictional amount is exclusive of interest and costs, therefore, the claim for "Miscellaneous litigation expenses" is not a viable request for damages.

In response to LCM's brief, plaintiff filed a brief that purports to support his itemization of damages by attaching a hodgepodge of invoices, canceled checks, charts, and receipts that are neither accompanied by an additional affidavit of the plaintiff specifically identifying which items are related to which category of damages, or any other identifying information that ties each individual item submitted to a specific claims for damages.[16] This Court concludes the submissions of the plaintiff – even when taken together – do not present "summary judgment-type evidence" sufficient to establish by a preponderance of the evidence that the jurisdictional amount exists.

Nor does the plaintiff establish how certain items of damages are related to the claims that remain pending in the lawsuit. A review of the Complaint and the prior rulings of the Court show the only claim that remains pending in this lawsuit is for breach of contract. Plaintiff seeks the remedies of expectation damages and injunctive relief as a result of that alleged breach. However, the plaintiff does not tie at least two claims for damages – those for the "Personal Loan to Dan Hubbard" and "Interest on Loan to Dan Hubbard at 5.5% for 4 years" – to his breach of contract claim. Indeed, the plaintiff's breach of contract claim does not appear to encompass a personal loan to Dan Hubbard, and the plaintiff's complaint does not state a claim for breach of a promissory note.

_____

[16] *See* Plaintiff's Response to Defendant LCM Corporation's Reply and Opposition to Plaintiff's Jurisdictional Memorandum, Doc. 56.

Because the amount of these two items of damages alone bring the jurisdictional amount below the required limit, this Court concludes the plaintiff has not shown by a preponderance of the evidence that the jurisdictional amount has been satisfied.[17]   Furthermore, with respect to the $20,000.00 amount claimed for "Miscellaneous litigation expenses," this Court notes the amount has not been supported by the plaintiff in any manner, and plaintiff admits this amount is an "estimate." As LCM points out, it is unclear whether the claimed damages for litigation expenses relate to the instant case, or to the underlying state litigation. For this reason alone, the Court concludes the plaintiff has failed to carry his burden of establishing that this amount should be considered in calculating the amount in controversy in the instant case. Furthermore, regardless of which lawsuit the claimed litigation expenses relate to, this Court notes that on the face of the statute, the "costs" of litigation are not considered in determining the amount in controversy. This Court notes the plaintiff has provided no jurisprudence or other statutory authority for the inclusion of costs as part of the jurisdictional amount in the instant matter. *See* 28 U.S.C. 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, *exclusive of interest and costs* . . .") (emphasis added).

With respect to the item of damages entitled "Exemplary damages due to breach of contract of implied good faith," in the amount of $250,000.00, this Court notes under Virginia law, punitive damages are not recoverable for breach of contract absent an independent tort." *See, e.g., Regency Photo & Video, Inc. v. American Online, Inc.*, 214 F.Supp.2d 568, 574 (E.D. Va. 2002), *citing Kamlar Corp. v. Haley*, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983). Rather, "[a]s a general rule,

---

[17] The amounts sought for the personal loan and interest comprise $12,388.00, which reduces the contract-related claims from 75,396.20 to $63,008.20, which is below the jurisdictional amount.

11

damages for breach of contracts are limited to the pecuniary loss sustained." *Kamlar*, 224 Va. at 705, 299 S.E.2d at 517.   In the instant case, plaintiff has not alleged the commission of any independent tort, and therefore, may not seek punitive damages for breach of contract.   Therefore, the $250,000.00 amount designated as "exemplary damages" cannot be considered by the Court in calculating the jurisdictional amount.

Finally, this Court addresses the item of damages entitled "Judgment against Richard C. Bentley due to Defendants' breach of contract (bad faith)."   This Court presumes the foregoing amount is subsumed within the "monies paid by Bentley to defendants," referenced in plaintiff's complaint. The magistrate judge did not cite and this Court was unable to find any cases addressing the viability of an amount in controversy that purports to be based on a state court judgment that is not final, but rather, is currently on appeal.   The magistrate judge suggests abstention pursuant to *Colorado River* is appropriate in order to stay the matter until the state court proceeding is finalized and the total amount of damages – if any – awarded against plaintiff in that litigation is known. However, this Court notes the amount of the judgment sought to be recouped by plaintiff against the defendants in this matter is not a *damage* contemplated by the breach of contract.   Rather, of the $159,488.57 judgment that was awarded against Bentley in state court, $137,041.75 of that amount was attorney's fees awarded to the defendant based on *plaintiff's own contumacious behavior*, while $17,446.76 in costs was awarded to Fanguy for the same reason.[18]   Indeed, the only amounts listed

---

[18] It is unclear to the Court to what the remaining $5,000.06 amount relates, however, there is a reference in the record to a $5,000.00 award of damages to Fanguy in the state court proceeding as an amount awarded for "damage to the Russian Olive hedge." The plaintiff does not clearly argue how such damage is in any way related to his breach of contract claim against the defendants in the instant case.

If the $5,000.06 amount is not the amount awarded for the shrub, there is a reference in plaintiff's briefing to another sanction awarded against him – in the amount of $4,883.00 – which could be related to the $5,000.06 amount. However, the plaintiff states the $4,883.00 sanction is included in the $80,907.53 amount that this Court has already concluded has not been sufficiently supported by the plaintiff. The foregoing further emphasizes the

by the plaintiff that appear to be directly related to the alleged breach of contract in the instant case are the amounts listed for "Payments to LCM Corp. For litigation support" ($36,655.75); "Payment to Dan Hubbard (MMH) for litigation support" ($15,480.00); "Payment to Dan Hubbard for expert report not delivered" ($6,649.95), and, possibly, "Paid to Bob Parker to cover for Dan Hubbard (expert)" ($4,222.50).  The foregoing amounts total $63,0008.20, which is below the necessary jurisdictional amount to sustain jurisdiction.

Considering the foregoing, this Court concludes the plaintiff has failed to sustain his burden of showing he has satisfied the amount in controversy.  Therefore, this Court concludes subject matter jurisdiction is lacking in this case, and the case is DISMISSED WITHOUT PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ____8____ day of September, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

haphazard and careless manner in which the plaintiff has attempted to satisfy his burden under 28 U.S.C. §1332, which bolsters this Court's opinion that proper summary judgment-type evidence has not been provided sufficient to establish by a preponderance of the evidence that the jurisdictional amount exists in this case.