**RECEIVED**

MAR - 2 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RICHARD C. BENTLEY | CIVIL ACTION NO. 08-1017 |
| VERSUS | JUDGE DOHERTY |
| LCM CORP., ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before this Court is a Motion for Reconsideration filed by plaintiff Richard C. Bentley [Doc. 130], in which the plaintiff urges this Court to reconsider its conclusion that the plaintiff "has failed to sustain his burden of showing he has satisfied the amount in controversy," and to find, instead, that this Court has subject matter jurisdiction over the plaintiff's claims pursuant to Rule 60 of the Federal Rules of Civil Procedure. *Pro se* defendant Danny R. Hubbard, II and defendant LCM Corporation oppose the motion [Docs. 133 & 134]. For the following reasons, plaintiff's Motion for Reconsideration is GRANTED, however, this Court concludes plaintiff's arguments concerning the amount in controversy are without merit and this Court concludes subject matter jurisdiction is lacking in this case, and plaintiff's attempts to reopen the case are therefore DENIED.

A.  **Factual and Procedural Background**

The facts and procedural background of the instant case have been set forth in previous rulings issued by this Court, and more particularly, in this Court's Memorandum Ruling dated September 8, 2010 [Doc. 128]. The facts will not be restated here.

B.  Law and Analysis

1.  Standard for Motion for Reconsideration

This Court has already reviewed the plaintiff's filings in connection with his attempt to establish the amount in controversy in this case and has concluded plaintiff does not carry his burden of demonstrating that jurisdictional amount exists. In the instant motion, the plaintiff urges this Court to reconsider that conclusion.

Without briefing the applicability of Rule 60 in any fashion, plaintiff merely asserts, in one sentence, he "moves the Court, pursuant to Rule 60" to reconsider the Court's ruling on jurisdictional amount. Defendants argue Rule 59(e) applies, contending a motion which challenges a prior judgment on its merits will be treated as a Rule 59(e) motion "to alter or amend," if filed within twenty-eight days after entry of judgment. *See e.g., Shepherd v. International Paper Co.*, 372 F.3d 326, n. 1 (5th Cir. 2004) (addressing Rule 59(e) motion before rule amended to allow filing within twenty-eight days – rather than ten days – of entry of judgment); *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991) (accord). The Fifth Circuit has held a motion which challenges a prior judgment on its merits will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b), depending on when the motion was filed. If the motion was filed within twenty-eight days of the entry of judgment, it will be considered under Rule 59(e); if filed after that time period, it will be treated as a motion under Rule 60(b). *See Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991), *citing Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (overruled on other grounds). In the instant case, plaintiff filed his motion for reconsideration within 28 days of entry of judgment, therefore the motion is properly considered under Rule 59(e).

Under established Fifth Circuit jurisprudence,

> A Rule 59(e) motion "calls into question the correctness of a judgment." This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (internal citations omitted).

In *Lavespere,* this Court recognized while a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless. 910 F.2d at 174. The Fifth Circuit has identified two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts, noting "[t]he task for the district court is to strike the proper balance between these competing interests. *Id.* The Fifth Circuit has further held "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *See Templet v. HydroChem Inc.*, 367 F.3d at 478, citing *Russ v. Int'l Paper Co.,* 943 F.2d 589, 593 (5th Cir.1991).

2. **Law Governing Jurisdictional Amount**

As explained by this Court in its previous ruling, "[t]he burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co., Ltd. v. Greenburg,* 134 F.3d 1250, 1253 (5th Cir.1998). "Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir.), *cert. denied,* 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d

119 (1995). To justify dismissal in a case in which the plaintiff claims a determinate amount, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289, 58 S.Ct. at 590. However, bare allegations of jurisdictional facts are insufficient to establish federal court jurisdiction. *St. Paul Reinsurance, supra,* 134 F.3d at 1253, citing, *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir.1993), *cert. denied*, 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994).[1]

The legal certainty test is inapplicable where the plaintiff does not allege a determinate amount of damages. *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d at 1253. Instead, the burden then becomes a preponderance of the evidence for the party seeking to invoke the court's jurisdiction. *Id.*[2] *See also Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (the party invoking federal diversity jurisdiction bears the burden of establishing the amount in controversy by a preponderance of the evidence). The party seeking to invoke jurisdiction must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000 or (2) setting forth the specific facts in controversy – often referred to as "summary judgment-type evidence" – that support a finding of the jurisdictional amount. *Id.*

In the case at bar, plaintiff has not adequately claimed a determinate amount and, therefore,

---

[1] *Asociacion* was a removed case in which the petition stated in a conclusory fashion that the matter in controversy met the jurisdictional amount. The Fifth Circuit has held that case law in removed cases regarding § 1332's jurisdictional amount requirement is "instructive" in analyzing similar issues in diversity cases filed directly in federal court. *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d at 1253 (5th Cir.1998).

[2] In *St. Paul*, the court noted the procedure in place for removal practice, *i.e.*, that the party involving federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, "is instructive in the converse context of" matters filed directly in federal court (in *St. Paul*, the matter field directly in federal court was a declaratory judgment action). *See St. Paul*, 134 F.3d at 1253.

must prove, by a preponderance of the evidence, that the amount in controversy exists, by setting forth the specific facts in controversy that support a finding of the jurisdictional amount.[3] In his first submission on jurisdictional amount, the plaintiff listed his damages as follows:

| Nature of Claim | Amount |
|---|---|
| Payments to LCM Corp. For litigation support | $ 36.655.75 |
| Payment to Dan Hubbard (MMH) for litigation support | $ 15,480.00 |
| Payment to Dan Hubbard for expert report not delivered | $ 6,649.95 |
| Personal Loan to Dan Hubbard | $ 10,000.00 |
| Interest on Loan to Dan Hubbard at 5.5% for 4 years | $ 2,388.00 |
| Paid to Bob Parker to cover for Dan Hubbard (expert) | $ 4,222.50 |
| Judgment against Richard C. Bentley due to Defendants' breach of contract (bad faith) | $159,488.57 |
| Exemplary damages due to breach of contract of implied good faith | $250,000.00 |
| Miscellaneous litigation expenses (writs, appeals, etc.) | $ 20,000.00 |

Although no documentation was attached to the original brief, plaintiff asserted "[a]ll items of damages can be documented upon request, except of course for the exemplary damages to be determined by the Court." The brief was further accompanied by an affidavit of the plaintiff, attesting the listing of damages is true and correct, and further stating the evidence of such items for damages were available for "inspection and copying."[4] Only after LCM sought to strike plaintiff's submission on grounds it did not present "summary judgment-type evidence" did the plaintiff submit any evidence to support his damages claims, and only then attached a hodgepodge of invoices, canceled checks, charts, and receipts that were neither accompanied by an additional affidavit of the plaintiff specifically identifying which items are related to which category of damages, or any other identifying information that ties each individual item submitted to a specific claim for damages.

---

[3] In plaintiff's complaint, he alleges he "has sustained damages, known and unknown, resulting of tortious breach of contract and wrongful compromise of [his] lawsuit." See Doc. 1, ¶21.

[4] See Memorandum in Support of Jurisdictional Amount, Doc. 50, p. 1.

This Court therefore concluded the submissions of the plaintiff did not present "summary judgment-type evidence" sufficient to establish by a preponderance of the evidence that the jurisdictional amount exists.

In the instant motion, the plaintiff attempts to re-argue many of the points he has already raised in previous filings. The Court will address each argument.

### 1. The $10,000.00 Personal Loan to Mr. Hubbard, and Interest

Plaintiff again argues the $10,000.00 personal loan he made to defendant Hubbard should be included in the amount in controversy, as well as interest on that loan in the amount of $2,388.00 for four years (which plaintiff argues has now increased to $2,569.00 for 50 months).

To support his argument that the $10,000.00 personal loan to Mr. Hubbard should be included in the jurisdictional amount, plaintiff argues he originally contacted Page and Kramer, an environmental consulting firm, to evaluate the environmental hazard presented by the sewage in his front yard ditch. Plaintiff argues Page and Kramer sent its employee, Mr. Hubbard, to consult with plaintiff "pursuant to oral agreement." Shortly thereafter, Mr. Hubbard's employment with Page and Kramer was terminated, however plaintiff argues he continued the oral agreement with Hubbard by paying him directly for his services as an environmental expert. Plaintiff argued it was during this period that he extended Mr. Hubbard a bridge loan of $10,000.00 "to facilitate [Mr. Hubbard's] going into the consulting business for himself, to set-up shop." Plaintiff argues this loan "assisted [Mr.] Hubbard's financial situation and allowed him to continue his services uninterrupted to [plaintiff] as environmental expert." Shortly thereafter, Mr. Hubbard was hired by defendant LCM, and the parties then executed the written contract at issue. Plaintiff argues the $10,000.00 personal loan extended to Mr. Hubbard is "part of the case or controversy at hand and provides the basis for

the Court to assert supplemental jurisdictional over the matter."

As an initial matter, this Court notes the contract alleged to have been breached in this case is not a contract between plaintiff and Mr. Hubbard. Rather, pursuant to the plaintiff's Complaint, the contract alleged to have been breached is the "Agreement to Provide Consulting Services – Bentley v. Fanguy," a written contract that was executed on March 21, 2007 between the plaintiff and defendant LCM Corporation, Mr. Hubbard's employer. Mr. Hubbard merely signed the agreement "on behalf of LCM." Consequently, this Court has question as to whether the complaint as pled properly alleges a breach of contract claim against Mr. Hubbard in his personal capacity (again, as Mr. Hubbard was merely a signatory to the contract in his capacity as an employee of LCM). Setting that issue aside without deciding it, however, this Court concludes the personal loan extended to Mr. Hubbard has no bearing on the March 21, 2007 contract that is alleged to have been breached.[5] Because the contract between plaintiff and LCM makes no mention of the extension of the personal loan to Mr. Hubbard as potential payment for the services rendered, this Court concludes to the extent plaintiff wishes to allege Mr. Hubbard did not repay the personal loan, such claim would be the subject of a separate and independent lawsuit. Indeed, plaintiff expressly argues the loan was to assist Mr. Hubbard's financial situation and to "allow him to continue his services uninterrupted to [plaintiff] as an environmental expert," and only now attempts to tie the personal loan to Mr. Hubbard to his claims for breach of contract against LCM. Based on the argument presented by plaintiff, this Court does not find the personal loan to Mr. Hubbard is related to the specific contract the plaintiff alleges was breached in the instant lawsuit. Therefore, the $10,000.00

---

[5] To the extent Mr. Hubbard had a prior oral agreement with Mr. Hubbard, such oral agreement is not the subject of the instant lawsuit. Additionally, to the extent plaintiff is arguing any oral agreement between him and Mr. Hubbard was modified by the extension of the personal loan to Mr. Hubbard, this Court notes the plaintiff has not briefed the issue of whether and to what extent it is possible to modify an existing oral contract under Virginia law so as to somehow bring the personal loan into play vis-a-vis the oral agreement between plaintiff and Mr. Hubbard.

7

personal loan and the interest accrued thereon should not be included in the amount in controversy in this matter.

### 2. Additional amounts not previously brought to the Court's attention

Additionally, this Court does not consider the additional $628.33[6] plaintiff alleges he paid to environmental expert Bob Parker, or the additional $1,015.00 paid to Mr. Hubbard that plaintiff "inadvertently" failed to include in his prior amounts. It is well-settled an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration. *Templet*, 367 F.3d at 479, *citing Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir.1991). Here, plaintiff has presented this Court with no reason why he did not include these amounts in previous briefs, other than mere inadvertence. Considering the foregoing, these amounts are not included in the amount in controversy.

### 3. $5,000.00 Damage Claim for Hedges

At the state court trial, the plaintiff was assessed with $5,000.00 in damages to a Russian Olive Hedge located on Mr. Fanguy's property. The trial court concluded the plaintiff had intentionally poisoned the hedge. Plaintiff continues to argue he did not poison the hedge and argues the amount of damages in connection with that finding should be included in the amount in controversy in this case. This Court has already concluded the amounts awarded to the defendant in plaintiff's state court case should not be included in the amount in controversy to the extent the damages were awarded because of the fault of the plaintiff, further noting any such amounts are not *damages* contemplated by the breach of contract. Considering the foregoing, this Court concludes

---

[6] Plaintiff argues "[u]pon further review of the facts, it appears that the amount paid to . . . Parker to cover for Hubbard is increased o $4,850.83 instead of the amount of $4,222.50 initially reported," which results in a difference of $628.33 that plaintiff argues should be included.

the amount awarded for the damage to Mr. Fanguy's hedge in the state court litigation should not be included in the amount in controversy in the instant case.[7]

### 4. Exemplary/Punitive Damages

Without arguing a *specific amount*, the plaintiff again argues "punitive damages" should be included in the amount in controversy in the instant case. In previous briefing, the plaintiff argued "exemplary damages due to breach of contract of implied good faith," in the amount of $250,000.00, should be included in the amount in controversy. As this Court previously explained, under Virginia law, "punitive damages are not recoverable for breach of contract absent an independent tort." *See, e.g., Regency Photo & Video, Inc. v. American Online, Inc.*, 214 F.Supp.2d 568, 574 (E.D. Va. 2002), *citing Kamlar Corp. v. Haley*, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983). Rather, "[a]s a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." *Kamlar*, 224 Va. at 705, 299 S.E.2d at 517. In the instant motion, plaintiff argues Mr. Hubbard's "intentional breach [of the contract] includes the independent tort necessary to an award of punitive damages," contending Mr. Hubbard "perpetrated conduct that shows malice, gross negligence, and recklessness."

Under Virginia law, in order to properly assert an independent tort as a separate cause of

---

[7] It appears the $5,000.00 damage awarded for the damages to the hedges was upheld on appeal in the state court proceeding, however, the resolution of the state court proceedings is not properly before this Court. On October 21, 2010, plaintiff's counsel sent a letter to this Court, attempting to enclose the judgment of the Louisiana Third Circuit Court of Appeal in plaintiff's state court case. Because the letter contained argument related to the pending motion for reconsideration, and because the letter did not appear to have been copied on all counsel of record, this Court issued a Minute Entry indicating the materials provided therein were not being considered by the Court, and that, in order for this Court to consider such materials, leave of court to file additional materials pertaining to the pending motion, with copies to all counsel of record, was required [Doc. 135]. Thereafter, plaintiff filed a Motion for Leave to File 3rd Circuit Judgment, [Doc. 136], which was deemed deficient by the Clerk of Court for failure of the plaintiff to obtain to the consent of all other parties to the filing. Plaintiff had ten days to correct the deficiency, and when the deficiency was not corrected, the magistrate judge signed an Order striking the deficient motion from the record [Doc. 138]. Therefore, the current status of the plaintiff's state court proceedings against Mr. Fanguy are not properly before this Court and the resolution of that matter, to the extent there has been a resolution, cannot be considered in ruling on the instant motion.

action, the claim must state a cause of action in tort that is independent from the breach of contract cause of action. *See, e.g., Vanguard Military Equipment Corp. v. David B. Finestone Co., Inc.*, 6 F.Supp.2d 488, 492-93 (E.D.Va. 1997). In other words, the duty owed by the alleged tortfeasor to the plaintiff must be derived from some source of law other than *ex contractu*. Virginia courts have interpreted this to mean "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Vanguard*, 6 F.Supp.2d at 492-93 (holding plaintiff properly asserted a separate common law basis for its breach of fiduciary duty claim in its complaint, and therefore, could be entitled to punitive damages).

In the instant case, plaintiff argues the alleged breach of contract "involves the malicious, wanton violation of *Defendants' fiduciary duty*." Plaintiff argues "there existed a fiduciary relationship between Plaintiff and Defendants as established by fact *and by written contract*."

It is axiomatic that in order for the breach of contract claim to include an independent actionable tort, the claim must state a cause of action in tort that is *independent from the breach of contract cause of action*, and the duty alleged to have been breached must be derived from some source of law other than *ex contractu*. Therefore, plaintiff's own assertion that the duty alleged to have been breached *arises from the contract itself* defeats the argument. Furthermore, plaintiff cites no caselaw holding a contract between a potential expert witness and a party to a lawsuit conjures a fiduciary duty. Indeed, the duty owed by LCM to the plaintiff was borne of the contract itself, *i.e.*, without the contract, there existed no duty on the part of LCM, or Mr. Hubbard, to the plaintiff. Therefore, this Court concludes plaintiff has not alleged the commission of any independent tort, and therefore, may not seek punitive damages for breach of contract. Considering the foregoing, the $250,000.00 amount designated as "exemplary damages" cannot be considered by the Court in

calculating the jurisdictional amount.

Recognizing that reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly, this Court concludes the plaintiff has failed to sustain his burden of showing he is entitled to the relief requested. Ergo, the amount in controversy in this case remains $63,008.20, which is below the threshold limit for federal jurisdiction. In light of the foregoing, plaintiff's Motion for Reconsideration [Doc. 130] is GRANTED, however, this Court concludes plaintiff's arguments concerning the amount in controversy are without merit and this Court concludes subject matter jurisdiction is lacking in this case, and plaintiff's attempts to reopen the case are therefore DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___2___ day of March, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE